Good morning. Mr. Grimes, we have you on the phone. This is Julia Gibbons. I'm the presiding judge of the panel. Judges Merritt and McKeague are here with me, and of course Ms. Shuker is present in the courtroom. With that, you may proceed, Ms. Shuker. May it please the court, there are two issues that I would like to discuss or address to this honorable court today. The first one being whether the petitioner should be ordered removed from the United States for being convicted of felonious assault in Michigan. And number two, whether petitioner firmly resettled in Canada before he entered the United States as an immigrant. First of all, I'd like to a little bit talk about the facts of the case because I believe it's important in this case. The petitioner in this case is a 34-year-old Chaldean Christian from Iraq. He entered the United States as a visitor when he was only 14 years old, and this was back in 1998. He became a lawful permanent resident of the United States through a petition that was filed by his parent, and in between these years he traveled back and forth between Canada and the United States since he had a sister who lived in Canada, and he was waiting for his grant of immigrant visa to the United States. Ms. Shuker, let's take the easy one first. I don't see how you win on the asylum claim because you admit that he had, I think it was called landed status in Canada. He admits and his father both admit that he had that. That's the equivalent of firm resettlement. I guess Canada calls it something different now, but it seems to be the functional equivalent, so I don't see how you win on that one. Your Honor, an offer of firm resettlement and this whole law about firm resettlement should not apply to people like my client. Well, maybe it shouldn't, but it does. It shouldn't because this is a case that I don't believe has ever been decided before. My client is not asking for asylum at the time that he entered the United States like most of these landmark cases do. They come to the United States and they're... Firm resettlement is never affected by what happens afterwards, and you want something to be two steps removed afterwards. You want us to consider what happened in the United States and then change country conditions after that. Is there any authority that supports your position before we spend a lot of time on this one of your arguments? Well, if you look at all the cases, the landmark cases for firm resettlement, it's always someone who was traveling from country to country and they enter the United States seeking refuge. My client's not seeking refuge. He entered the United States as a lawful permanent resident. It wasn't until a decade after that his firm resettlement became necessary. It was because of the changed country conditions in Iraq that caused him to apply for asylum. This claim didn't arise until 10 years after he entered the United States. So I don't believe we should look back to see when... Is there any case that supports your argument? That's the thing. This has never been decided by any court before. I'm going to join Judge McKeegan in suggesting that you move on to your other argument, which I think we might have some questions about. You may choose to be in this ditch for a while if you want to, but I'd suggest that you might want to move to the removability issue. Okay. Your Honor, may I just go through the framework that applies to this case? The first issue in this case is... The first step in the framework is the government has the burden of proving that he firmly was settled. And I don't believe they did that just because he testified that he was granted landed immigrant status. The bigger issue comes here is if he is removed to Canada, Canada will not accept him today. They will not allow him to reenter Canada because Canada has a law that if you're out for two years as a landed immigrant, you have abandoned your residency. So for him to go back to Canada, that's not going to happen. So what's going to happen is they're going to send him back to Iraq. And he is withheld from being removed to Iraq. So we are in a very odd situation here. And this case has to be decided by the government. It has to be decided by this court because no other court can decide for him if firm resettlement should apply in this case. I don't believe it should apply because, like I said, initially he was not... What you're saying is there is no case on the question of what happens on this resettlement issue if the country that he first settled in is no longer allowed him to return to that country. Is that what you're saying? There's no case on that particular point? Right, Your Honor. That issue also and the issue of, you know, if we look at the history of firm resettlement laws and why firm resettlement even came out in the first place, the whole intention was to stop people from form shopping, from going from country to country and obtaining status and then coming to the United States and then obtaining status here. But that's not the case here. This is a case that this guy has been here as a permanent resident for years and his claim for asylum didn't even arise until ten years later. So if it weren't for the changed country conditions, then he would not be able to apply for asylum. But because of the changed country conditions, we should look at it from that point on. His claim for firm resettlement should begin at that point. At the point of him being not allowed to return to his country. How do we know that he's not going to be allowed to return? To Canada? Because, I mean, Your Honor, it's all over the internet. I mean, that's the law in Canada that if you do not, if you leave the country for a period of two or more years, that you cannot return to that country. May I, I want to direct your attention to my primary concern in the case and that's this. This concession of removability that Mr. Hanna's counsel made on his behalf ten or so years ago has given him a lot of problems in having his other claim considered. You tell us in your brief that there's been a change in the law. What you don't tell us in your brief is you don't refer to any of the authorities out there that might assist us in defining the standard under which it would be determined whether he should be released from such a concession. Do you have anything to suggest to us today, any authorities that would be appropriate for us to consider as a standard for making that determination? Your Honor, I rely on two cases, Singh v. Holder and Matter of Silva Trevino. Those two cases both indicate that... You've talked about the change in the law, but you haven't, we've got to decide whether a change in the law, whether the overall circumstances would justify relief from the concession. What's missing here is authority that says a change in the law is sufficient or there must be such and such circumstances. I'm asking you if you have anything that supplies that other piece, the standard, not cases that establish that there may have been a change in the law or at least there's a movement in the direction of the law. I'm seeing if you can help us out with what the overall standards should be. When I did my research, I didn't find any case law that says when there's a change in the law that that person can go back and change his plea. There's no such thing. What I like the court to look at is he was already ordered removed years ago. In 2006. When we reopened the case, once the case is reopened, you go back to as if the case is brand new. There's no final order of removal. So at that point, when the case got reopened based on changed country conditions, I believe the judge should have given us the opportunity to change the plea on the basis of the law being changed. The judge did not allow me to do that. She said, oh, this is something that should have been done before. Well, that was the time that I had to address that issue. That was the only day that I had at the individual hearing to address that issue. And the judge did not allow me the opportunity to do that. But because the case got reopened and it's a brand new case based on, you know, initially the judge had denied his asylum, denied withholding, denied everything, and found no past persecution or fear of future persecution. Then when the case got reopened, it's a brand new case. And because it's a brand new case, the court should have considered our arguments on, you know, whether or not the law should take effect on the pleadings, the initial pleadings. Why is it a brand new case? Why isn't it just a new proceeding to determine changed country conditions? It is. It is, Your Honor. But that's what I mean. It's a new case. So why do you start over on the other things? Because... We're having enough trouble with finality in immigration proceedings without saying that in a changed country condition claim, you reopen everything else in the case. Yeah, because, Your Honor, the case is not... I understand and I agree with you that it is not a brand new case. It's, of course, a case that you're reopening based on changed country conditions. But because his case is reopened and it's before the court... But the question is the purpose for which it's reopened. If it's reopened in connection with what's the new situation on the ground in the country where you claim you're going to be persecuted, what does that have to do with whether, in this case, this other issue of whether the crime was a crime of moral turpitude? Why would that be reopened? Well, Your Honor, I mean, it's just like when... There may be other reasons to reopen it, but I don't understand your argument. Yeah. Well, because just think of it as when the Board of Immigration Appeals remands the case back to the immigration court, reopens the case, remands it back, the court is allowed to hear any and all applications for relief. If there's a new application, for example, the person just got married and he wasn't married at the initial proceedings, then he's allowed to file for an adjustment of status. So the same should take place as far as the pleadings in the court, how his first attorney pled to the allegations and the charge. So I look at it like, okay, if you're allowed to bring in new claims, new applications for relief, you should be able to address the pleadings that were initially pleaded by his initial attorney. I think we should be able to change that if we need to, because other changes do take place when you reopen a case. Your Honor, I'd also like to address the fact that his claim, his felonious assault, and it's been decided that this felonious assault is not even a crime involving moral turpitude. So I don't see how this person should pay the price for the rest of his life just because of a law that existed more than 10 years ago. I think this court should consider that and also consider that he did not firmly resettle in Canada because firm resettlement should not apply in this case, Your Honor. And what you're asking us to do is to take judicial notice, as I understand it, because it's not, you haven't shown us that he could not resettle in your briefing. You want us to take judicial notice that he could not resettle in Canada. I do, Your Honor. And what document do you want us to take judicial notice of? I, you know, I don't have a document in front of me, Your Honor. I mean, this is something that I was reviewing, you know, online through the legal acts of the Canada Legal Immigration Act, and I was reviewing that and noticed that if someone were to leave the country for an X amount of years, two years or more, that he would not be able to return. But, you know, even not considering that, even if we don't consider that, firm resettlement should not apply to these kind of people. It should apply to someone who is going from a $1,000 to a $2,000. This is a unique case. It has unique facts. And I'd like the Court to consider those facts and consider these circumstances. All right. There's nothing further. Okay. Thank you, Your Honor. We'll hear from you, Mr. Grimes. Thank you, Your Honor. Good morning, Maple Leaf Court. My name is James Grimes. I'm here on behalf of the Attorney General. I'll try to address some of the concerns the Court  has. The Board alludes to that standard on page 7 of the record, but really, the preliminary matter, Petitioner didn't argue about that standard to the Board because he really didn't recognize the effect of the judicial admission. But if you look at page 7, the Board refers to a case called the Matter of Alaska, where it says, absent egregious circumstances, the Petitioner did for the Board, and I'm referring to pages 83 to 90, he had a counsel, he filed a brief, and he didn't attempt to repudiate his concessions and submissions instead. He sort of misrepresented what occurred because he said his counsel had tried to argue the issue to the immigration judgment was shut down, and I'd refer the Court to pages 422 to 428 of the record, and as we explained, it's not a brief. That's not what happened. What instead happened was his counsel simply expressed that she thought the issue had been contested, but then the immigration judge read the transcript of what had occurred, and that was more or less the end of the matter. There wasn't an attempt before the immigration judge to argue that the concession shouldn't be binding, so when the Board got the issue, the Board said, well, you have this concession, and the concession is binding unless you show a reason that it shouldn't be binding, and one way that that could be done, Petitioner could have claimed that his initial counsel was ineffective. That's one way he could have done it. He didn't do that. I would note that there's a regulation we cited in our brief that states CFR 1240.10c, and it directs immigration judges to call on aliens to plead, and the immigration judges and the Board would never go for a lie. Well, what's the other way, other than claiming ineffective assistance of counsel, that you see that he could have sought relief from the concession? Well, I'm not sure what that would be, since the Board had talked about the standard, but since Petitioner didn't call on the Board to address the standard, the Board simply said that the standard agrees with the circumstances. Ineffective assistance is the way it comes to mind to me. But, I mean, you could make an argument. You know, your answer to the change of the law thing in your brief is sort of, oh, well, seeing is an unpublished case, and it's not precedent, but it appears that seeing has been applied by the Board, and it does appear that there's a very viable legal argument available to Mr. Hanna at this point concerning the particular provision of Michigan law encompassing both crimes involving moral turpitude and those not involving moral turpitude, and so, I mean, it seems that he has a viable argument about change in the law and a viable legal means through which to challenge removability that was not available to him at the time his counsel originally made the concession. And he could have sought, couldn't he, to have argued that that change in the law presented egregious circumstances justifying relief from the concession, and he would not have had to show ineffective assistance of counsel in that context, correct? Well, I'm not sure how the Board would have dealt with that exact, how the Board would have dealt with that issue, Your Honor. Well, the fact that you might not know how the Board would have dealt with it doesn't, I mean, it would seem to be available to him based on the language of Velazquez and actually based on some case authority other than, in various courts other than Velazquez. Well, I would agree, Your Honor, that the statute, I think the same in this court, the decision of Singh said that that statute is divisible, and I don't think that the modified categorical approach and the categorical approach, and that's more of an analysis of something new, certainly Singh's counsel would be able to, Singh would be able to present that argument, and so Mr. Hanna could have presented the same argument, but he chose to do so. Well, Singh was, Singh as a case decided a number of years later, and normally, you know, I suppose one doesn't, we're now getting all of these determinations in other contexts that sort of analogize to the immigration context, and that wasn't something the immigration courts were really necessarily heavily involved in in 2002 or 3 or whenever, so I don't know, I mean, maybe it could have been raised earlier, but it would have seemed to have involved a level of creativity and foresight that many lawyers would not have possessed. Are you done? Mr. Grimes, this is Judge McKee. Inasmuch as Velasquez seems to go on to say, as I read it at least, that an alien can be relieved of an admission if they can show that enforcing the admission would produce an unjust result, what's your best argument against remanding this case to the board to determine whether the statute is divisible and which side he falls on to avoid an unjust result? Well, Your Honor, I think that he could have, for all we know, this was a tactical decision by his counsel, because the counsel may have obtained the guilty plea transcript and decided that he didn't want to contest that issue. I would concede that the statute is divisible for purposes of this argument. He could have presented that issue. Well, what's the interest of the United States at this point in forcing him to live with that concession? Finality, for one thing, Your Honor. Also, the immigration judge and other immigration judges should be able to rely on the concession, because that is what the regulation calls for. He could have claimed an injunctive assistance from counsel. Excuse me, Mr. Grimes, Velazquez recognizes that there's an exception to finality, whether they phrase it in those terms or not. So when we get finality, not that immigration matters seem to ever be final, the way they run it, but putting that aside for just a second, in this particular case, aside from finality, why wouldn't this go back to determine which side of the divisibility line this prior crime falls on? There's also the issue of delay. He could have raised this issue to the board as far as explaining why his concession should have been avoided. He could have argued to the immigration judge at that point. And really, if you look at pages 422 to 428, when the immigration judge explained what had happened, counsel accepted that, and that was the end of the matter. So it's sort of getting a second bite of the apple. It's sort of, I don't know if you'd call it sandbagging, because essentially he was saying to, by conceding, he was saying to the government, you don't need to present any more evidence. You don't need to present an argument on whether or not... Well, other than your eagerness to ascribe to Mr. Hanna the decisions that were made by his counsel, both initially with respect to the concession and later on with respect to the issues that were raised, looking only at Mr. Hanna and not his lawyers, what's the interest of the United States in not having him have an opportunity to have this issue considered in the immigration proceedings? Well, again, it's the time and resources that have been put into this case already, and he is bound by his agent's concession, unless he wants to establish that they were ineffective. Again, he could have done this many, many years ago, and now we find ourselves here with him essentially trying to get a second bite at the apple. Normally he would be bound by his concession. He would be bound by his terms. But not always. That's correct, but he really didn't present that argument to the board. He didn't say, well, here's why I still have to avoid my concession. He sort of went to the second step. So your second argument is really a waiver argument? Oh, in this issue, Your Honor? Right. Well, a waiver or exhaustion, I suppose. He certainly had opportunities below to present it and did not. Counsel, this is Judge Merritt. Let me ask you about the other issue of returning to Canada. Yes, Your Honor. What is your position? Counsel here says that it's clear that he may not now return to Canada under Canadian law, and therefore that defense should not be used in this case. What is your response to that? Well, Your Honor, I have a two, maybe three-part response to that. First is, the record doesn't, there's nothing in the record that shows that. Counsel made that assertion below that he could return to Canada, page 904, pleading. But there's no actual evidence in the record that that's the case. And he's argued that, I think he said that he's going to be sent to Iraq by Canadian authorities. He filed state motions several months ago when he said that, but that's not what happened. You don't yourself know one way or the other what the Canadian law on this is? I do not. Well. He hasn't presented that and didn't present it below. His counsel made the assertion, but there was no evidence presented. I would like to clarify that he has withholding removal from Iraq. U.S. authorities are not going to send him to Iraq. And what U.S. Immigration and Customs Enforcement will do, I'm told, is they'll verify with Canada what his status is before they try to send him there. They're not simply just going to push him across the border. So if he cannot return to Canada, then what you're saying is he will be granted asylum here? No, Your Honor, he will not. He wouldn't be granted asylum here. He has withholding removal, so he wouldn't be removed to Iraq, but he wouldn't be granted asylum here. Unless, of course, this court were to grant a petition as a resettlement issue. Well, what will happen? What will happen then if you're right about this and that if he can't go back to Canada, what will happen? Well, he'll be here. Actually, this is the exact situation that came up in the Second Circuit's decision in Chinchilla, which we cited. If you look at the last footnote in that decision, the court talks about the fact that the alien couldn't go back to and also couldn't go to the country of resettlement because the alien status had lapsed. It is sort of an in-between position to be in if he can't go back to Canada, but that's sort of – if that were really an issue for him, he should have attempted to prove that below. In the end, I don't know that it would matter, especially if you look at this court's decision in Haleem, which suggests that the last – So you don't really know what will happen? No, I don't, Your Honor. He didn't prove it below. Well, maybe we should have that issue of his status in Canada briefed by the parties in the case. I mean, on the one hand, counsel says we should take judicial notice of it. I have no idea what Canadian law is about this. Should we have it briefed? Is it significant? In the end, I don't think so, and I'm trying to explain why. First, matters of foreign law, the board has always considered matters of foreign law to be matters of fact to be proven by the parties, so that wasn't proven here. But under Tichoui, which we cited, and under this court's decision in Haleem, whether his status has lapsed or not doesn't matter, because what matters is what happened prior to coming to this country. That's what the regulation says. But it doesn't make sense. Does it make sense in a case in which he cannot return to the landed country? I mean, the whole purpose of it is that he can go back to where he was before rather than stay in the United States. But if that's not possible, does it make sense to apply some rule of that kind when it can't happen, right? It is. It's somewhat of an odd situation, although the case law talks about how these unilateral decisions by an alien to allow his status to last can't be something that he can benefit from in order to avoid the bar. That's what the board said in matter of AEG. That's what this court said in Haleem, that he sort of put himself into this odd situation. But again, he hasn't shown. He didn't show it below when he had the opportunity that what would happen even if it did matter. But I think ultimately under the precedent from this court, from other courts, from the board, ultimately it's not going to matter because the statute and the regulation focus on what happened prior to. They don't ask what happened since or what the alien has done since. It's just what happened prior to. If I could, I see my time is almost up. I want to clarify a thing because I heard a petitioner say that he was 14 years old when he acquired status in the United States, and that's actually not correct. If you look at page 1434 of the record, you can see that he turned 18 in April of 1997, so he would have been 19 in 1998 when he would have achieved status in this country. So he would have been an adult at the time that he left Canada and allowed, if he did, allowed his status to last. I think the key thing that I was trying to leave before we went to Chewy, the Second Circuit's case recognizing that was that the regulation requires courts and the board to consider all ties established with a third country, including the ties that were formed before the persecution or fear of persecution given rise to asylum claim arose. So for that reason, we would ask that you deny the petition as to that issue  In order for the questions, I'll thank you for the accommodation for your time. Yeah. Mr. Shooker, did you reserve any time for rebuttal? I don't think so. She did not, Your Honor, but she did have close to a minute left. I have some concern in this case about what the law of Canada is. If the man cannot return to Canada as an alternative, it seems to me we ought to know what the law of Canada is and we shouldn't guess at it. So if you don't mind, I would like to have counsel on both sides submit a letter to us that sets out what you claim the law of Canada is and how we might determine that. I think that would be fine with me. Could you all do that within a week of today's date? Your Honor, I'm going to confer with my superiors given the shutdown. I'm not sure what my status is once this argument is over. Well, we will be expecting something from the United States within seven days. And if the United States selects not to submit anything, we'll try to muddle through without your submission. I understand, Your Honor. If that's the case, it won't be my choice, I can tell you that. I will endeavor to resolve that issue. Does he have a problem with that? No. Okay. Do we want to let her take her 30 seconds or whatever it is or just go on? I don't care. Okay. Since you did not use your total time, if you have something you want to say, it will take 30 to 45 seconds, Ms. Shuker. We'll let you say it. Otherwise, I think we're done. Thank you. I'll try my best to get it correct. The government had, of course, yes, we can present a letter with regards to the Canadian laws, and I appreciate that, Your Honor. Meadow Velasquez, he indicated ailing can be relieved from admission. Your Honor said that. From admission, if he can show the result, it would result in unjust result. And in this case, it would result in injustice because we are allowing this person to be removed to a country that he is not allowed to return to and eventually return to Iraq. That's the unjust result. And also, he would be deprived for the rest of his life from relitigating this issue of whether or not he is allowed or he had committed a crime involving moral turpitude. The law is clear on that, that if we don't allow him to do that for the rest of his life, he's going to have an order of removal. Order of removal and withholding, they can still send him back to the country if the country conditions improve at all. Viable, he said something about viable legal argument about change in the law. We don't need to show ineffective assistance of counsel, Your Honor. All we have to show is the result would become unjust. And in this case, we have done that. I think you are now indeed out of time. Yes, Your Honor. We thank you both very much for your argument and we'll consider the case carefully. Thank you.